IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:23-cv-00046-MR

| | |
|---|---|
| GEORGE MICHAEL STEEN, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> TODD ISHEE, Secretary, ) <br> Department of Adult Correction, ) <br> and BRETT BULLIS, Warden of ) <br> Avery-Mitchell CI, ) <br> ) <br> Respondents. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** comes before the Court on the Respondents' Motion for Summary Judgment [Doc. 5] and the Petitioner's Motion for Summary Judgment [Doc. 7].

**I.     PROCEDURAL BACKGROUND**

George Michael Steen ("the Petitioner") is a prisoner of the State of North Carolina. This is a 28 U.S.C. § 2254 habeas corpus proceeding that stems from the Petitioner's conviction in Lincoln County Superior Court on March 28, 2012. [Doc. 1 at 1]. The Petitioner was convicted of one count of sexual offense with a child and two counts of first-degree sexual offense with a child. [Id.] The Petitioner appealed his conviction to the North Carolina

Court of Appeals, which found no error. State v. Steen, 226 N.C. App. 568, 569, 739 S.E.2d 869, 871 (2013).

On March 10, 2014, the Petitioner filed a Motion for Appropriate Relief ("MAR") in Lincoln County Superior Court, alleging ineffective assistance of counsel for failure to investigate and request additional evidence. [Doc. 1 at 3]. On May 23, 2014, Superior Court Judge Forrest Donald Bridges directed the State to file a response to the Petitioner's MAR and directed the matter for hearing. [Doc. 1-2 at 88-87]. After the State filed its response, the Petitioner moved for post-conviction discovery on September 30, 2014. [Id. at 112]. On October 24, Judge Bridges ordered production of records and review of records *in camera*, specifically, records from the Lincoln County Department of Social Services and from the victim and his family's mental healthcare providers. [Id. at 114-15].

After such documents were provided, the Petitioner filed an amendment to his MAR on June 14, 2017. [Id. at 128-29]. On January 8, 2018, Judge Bridges ordered the State to respond to the amended MAR by January 22, 2018. [Id. at 239]. On June 6, 2018, after the State filed its response, Judge Bridges ordered an evidentiary hearing. [Id. at 242].

After hearing, the amended MAR was denied on January 7, 2020. [Id. at 296]. The Petitioner appealed the denial, and the North Carolina Court of

Appeals affirmed the denial on December 20, 2022. [Id. at 435]; State v. Steen, 2022 WL 17819712, *1-6 (N.C. Ct. App. 2022) (unpublished).

The Petitioner filed his § 2254 Petition for Writ of Habeas Corpus in this Court on April 3, 2023, alleging ineffective assistance of counsel. [Doc. 1]. The Court entered an Order on April 17, 2023, directing the Respondents to respond to the § 2254 petition. [Doc. 2]. The Respondents filed their Motion for Summary Judgment on June 16, 2023, moving this Court to grant summary judgment in its favor and deny the § 2254 petition. [Doc. 5]. In support, the Respondents submitted a brief along with pleadings related to the Petitioner's original criminal case and the exhaustion of the Petitioner's state remedies. [Doc. 6].

The Petitioner filed his own Motion for Summary Judgment on June 29, 2023. [Doc. 7]. The Petitioner also filed a Response in Opposition to the Respondents' Motion on June 30, 2023. [Doc. 8]. To date, the Respondents have not responded to the Petitioner's Motion, nor have they filed any reply. The parties' Motions for Summary Judgment are now ripe for review.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56). The burden then shifts to the nonmoving party to proffer competent evidence and specific facts showing that there is a genuine issue for trial. Id. at 323-24. The nonmoving party must oppose a summary judgment motion by going beyond the pleadings and by their own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Id. (citing Fed. R. Civ. P. 56). The nonmoving party "may not rest upon the mere allegations or denials of his pleading" to defeat a motion for summary judgment. Id. at 322 n.3.

Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary

4
Case 5:23-cv-00046-MR   Document 10   Filed 03/29/24   Page 4 of 15

judgment motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate.  Id. at 599.  A court is bound to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

In reviewing the Respondents' Motion for Summary Judgment, the Court must also consider the requirements governing petitions for habeas corpus as set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d).  The AEDPA applies to "a person in custody under a state-court judgment who seeks a determination that the custody violates the Constitution, laws, or treaties of the United States."  Rule 1(a)(1), 28 U.S.C. foll. § 2254.  Under the AEDPA, federal courts may not grant relief on a habeas claim that has been adjudicated on the merits in a state court proceeding unless the state court's determination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or

"was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision constitutes an unreasonable application of clearly established federal law under § 2254(d)(1) when the state court correctly identifies the "governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." Barnes v. Joyner, 751 F.3d 229, 238 (4th Cir. 2014) (citation omitted). In making this assessment, the Court looks "to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." Id. at 238-39 (citation omitted).

For a state court's factual determination to be held unreasonable under § 2254(d)(2), "[the determination] must be more than merely incorrect or erroneous." Williams v. Stirling, 914 F.3d 302, 312 (4th Cir. 2019) (citation omitted). The state court's finding must be "sufficiently against the weight of the evidence that it is objectively unreasonable." Id. (citation omitted). The AEDPA also provides that "a determination of a factual issue made by a State court shall be presumed to be correct" absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1).

### III. FACTUAL BACKGROUND

The forecast of evidence viewed in the light most favorable to the

Petitioner is as follows:

The Petitioner was indicted on March 15, 2010, in Lincoln County Superior Court. [Doc. 6-2 at 2-4]. The Petitioner was tried by a jury and was found guilty of two counts of first-degree sexual offense with a child and one count of sexual offense with a child on March 28, 2012; he was then sentenced to a term of imprisonment of 300-369 months. [Doc. 6-16 at 1-2].

The evidence presented at trial showed the following: The Petitioner was the foster parent of the victim in his criminal case, M.S. [Doc.1-1 at 3]. On December 14, 2007, M.S. returned to living with the Petitioner and his wife after having been placed back in his biological home for a short time period. [Id. at 4]. On February 13, 2009, the Department of Social Services ("DSS") removed M.S. from the Petitioner's care after M.S. crawled under a bathroom stall at school and had sexual contact with another child. [Id.]. He was eight years old at the time. [Id.]. In the year that followed, M.S. was placed in approximately 10 different homes, eventually being placed with the Ledford family on July 2, 2009. [Id.].

On approximately February 2, 2010, M.S. told Debbie Ledford that the Petitioner abused him during his most recent stay in his home; Ms. Ledford reported M.S.'s allegations to DSS, and DSS began an investigation. [Id.]. At the time that M.S. reported this, he was in treatment because of concerns

that he was an abuser, and a few months later, on April 15, 2010, he left the Ledford's home because they could no longer handle his sexual behaviors. [Id.].

M.S., who at that point was approximately eleven years old, testified at trial that he learned sexual behaviors from the Petitioner showing him. [Id. at 5]. Many of the State's witnesses testified that M.S. was known to lie, but the lying was characterized as not any more than that of an average kid. [Id.]

The additional records that were obtained by the Petitioner's attorneys post-conviction, including DSS records and notes from a therapist who had treated M.S. as well as his sisters during the relevant time period, indicated that M.S. had prior knowledge of sex from his biological home, and that M.S. had a tendency to lie about sexual issues. [Id. at 6]. Specifically, there was evidence that M.S.'s oldest sister sexually abused him when he was approximately four years old. [Id.]. There was evidence of both anal and vaginal intercourse between M.S. and his sister. [Id. at 7]. The oldest sister never lived with the Petitioner and his wife, which the Petitioner argues indicates that M.S. experienced sexual abuse before being placed with the Petitioner, or during the brief reunification period before he returned to the Petitioner's home. [Id.]. M.S. alleged that the Petitioner abused him after the reunification in 2007. [Id.].

Additional records also showed that M.S.'s social worker, who had testified at trial that M.S. did not lie more than the average child, had made notes that one of M.S.'s goals was to "accept responsibility for his sexualized behaviors as evidenced by not lying, being manipulative or rationalizing his actions 4 out of 7 days a week for 90 days." [Id.].

At the MAR hearing, the Petitioner presented two witnesses, Susan Weigland, an experienced public defender who worked on child sex abuse cases, and Dr. Virginia Hart, a forensic psychologist who frequently consulted and served as an expert witness on such cases. [Doc. 1-1 at 8]. Ms. Weigland testified that that Petitioner's trial counsel was unreasonably deficient in not seeking additional records based on the information that he was provided, and not attempting to interview Teresa Grigg, who was M.S.'s and his sisters' therapist. [Id.]. Dr. Hart testified that the additional records obtained post-conviction gave several other explanations as to how M.S. could have learned about sexual behaviors aside from any abuse by the Petitioner. [Id. at 9]. She also testified as to M.S.'s pattern of lying about sexual behaviors and his potential motivation for lying about the Petitioner, including that M.S. was trying to conceal the abuse he experienced from his sister so that he could be reunited with his biological family. [Id.].

At the conclusion of the hearing, the state court judge denied the MAR,

finding that trial counsel's performance did not rise to the level of ineffective assistance of counsel under the Sixth Amendment. [Doc. 1-2 at 381].

## IV. DISCUSSION

The right to counsel guaranteed by the Sixth Amendment includes the "right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To successfully challenge a conviction based on ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in Strickland, which requires the petitioner show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 688, 692.

The first prong requires that petitioner show that counsel's performance was deficient by articulating specific acts or omissions that fell "outside the wide range of professionally competent assistance." Id. at 690. The petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

To establish prejudice under the second prong, the petitioner must

demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The petitioner must show that counsel's error worked to his "actual and substantial disadvantage," not merely that it created a "possibility of prejudice." Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

The court need not analyze both prongs if petitioner makes "an insufficient showing on one." Debreus v. United States, 2012 WL 3686250, *3 (D.S.C. Aug. 24, 2012) (citing Strickland, 466 U.S. at 697). Failure to satisfy either prong is fatal to a petitioner's claim. Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir. 1992).

"When assessing a Strickland claim through the lens of AEDPA, [the Court's] review is 'doubly deferential.'" Valentino v. Clarke, 972 F.3d 560, 580 (4th Cir. 2020) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)) (citations omitted). "The pivotal question [becomes] whether the state court's application of the Strickland standard was unreasonable." Harrington, 562 U.S. at 101. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id. In order to obtain habeas relief in federal

court, the movant must show that "the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

Looking to the state court's application of the Strickland standard, the court found that the Petitioner's claim failed at the first step. [Doc. 1-2 at 380-81]. While the Petitioner, through his witnesses, argued at the MAR hearing that trial counsel could have done more, and that additional information would have been helpful, the court found that this alleged deficiency did not fall below the standard of objective unreasonableness, and indeed could be argued in virtually any case. [Id.]. The question before this Court is then whether this analysis and conclusion is unreasonable.

The Petitioner contends that trial counsel was deficient in not doing enough investigation and not seeking additional relevant and available documents. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. While, as the state court acknowledged, the information obtained post-conviction could have been helpful at the time of the trial, it cannot be said that trial counsel's failure to investigate or obtain such information was an "error[] so serious that counsel

was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 687)). "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Harrington, 562 U.S. at 107. Nothing in the record indicates that trial counsel was anything but professionally competent, and under Strickland, trial counsel is entitled to a heavy measure of deference to the judgments he made in preparing for trial. Strickland, 466 U.S. at 691. "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" Harrington, 562 U.S. at 109 (2011) (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam)).

It needs to be emphasized that the Court recognizes that the Petitioner may well have been wrongfully convicted. That, however, is not the question before the Court. The issue is whether Petitioner's counsel was constitutionally deficient. A jury can come to a wrong conclusion despite competent representation. Applying the Strickland standard, Petitioner's counsel's representation was minimally sufficient. That is all this Court has the jurisdiction to answer.

Because the Petitioner has not demonstrated that the state court's

rejection of the ineffective assistance claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement," the Petitioner's application for federal habeas relief based upon ineffective assistance of counsel is denied, and likewise, the Petitioner's Motion for Summary Judgment is also denied. Id. at 103. As such, the Respondents are entitled to summary judgment.

**V.   CONCLUSION**

For the reasons set forth above, the Court rejects the Petitioner's claim for ineffective assistance of counsel. The Petitioner fails to meet the demanding standards of Strickland and the AEPDA. Accordingly, the Respondents' Motion for Summary Judgment[1] will be granted and the Petitioner's Motion for Summary Judgment and § 2254 will be denied.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (noting that, in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

---

[1] In their Motion, the Respondents also argue that the Petitioner's § 2254 petition should be dismissed as untimely. Because this Court is denying the petition on the merits, it need not address the Respondents' timeliness argument.

debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that, when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1) The Respondents' Motion for Summary Judgment [Doc. 5] is **GRANTED**;

2) The Petition for Writ of Habeas Corpus [Doc. 1] and the Petitioner's Motion for Summary Judgment [Doc. 7] are **DENIED**;

3) The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases; and

4) The Clerk is directed to terminate this case.

**IT IS SO ORDERED.**

Signed: March 29, 2024

Martin Reidinger
Chief United States District Judge